IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TRACY M.,[1]

              Plaintiff,                           Civ. No. 3:23-cv-01970-MTK

       v.                                 OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____

**KASUBHAI,** United States District Judge:

       Plaintiff Tracy M. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her applications for disability

insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of

the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's

decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's final decision

is affirmed.

   / / /

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party.

## PROCEDURAL BACKGROUND

Plaintiff filed her applications for DIB and SSI on September 5, 2019, alleging an onset date of November 18, 2018. Tr.[2] 172, 189. Her applications were denied initially and upon reconsideration. Tr. 187, 204, 227, 246. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on December 8, 2020. Tr. 142–69. On March 26, 2021, the ALJ issued a decision finding Plaintiff not disabled within the meaning of Act. Tr. 122–36. The Appeals Council denied Plaintiff's request for review on August 8, 2021. Tr. 1–6. Plaintiff then filed an appeal with this court, in which the ALJ's decision was reversed and remanded for further proceedings. Tr. 1398–1400. A second hearing was held before an ALJ on June 2, 2023. Tr. 1292–1326. On August 25, 2023, the ALJ issued another decision finding Plaintiff not disabled within the meaning of the Act. Tr. 1210–38. This appeal followed.

## FACTUAL BACKGROUND

Born in 1990, Plaintiff was 28 years old on her alleged disability onset date. Tr. 172. She has a high school education and has no past relevant work. Tr. 1236–37.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

"both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff meets the insured status requirement through September 30, 2023, and that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of November 18, 2018. Tr. 1213. At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, peripheral polyneuropathy, polyarthralgia, bilateral trochanteric bursitis, obesity, posttraumatic stress disorder, generalized anxiety disorder, attention deficit disorder, and depression/bipolar disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed

impairment. Tr. 1215. The ALJ then assessed Plaintiff's RFC and found Plaintiff was capable of

performing light work with the following limitations:

> [S]he can frequently climb ramps, stairs, ladders, ropes, and scaffolds; can
> occasionally stoop and crouch; can frequently handle and finger bilaterally;
> should avoid concentrated exposure to vibrations and airborne irritants (such as
> fumes, odors, dusts, gases and poor ventilation); can understand and remember
> short, simple instructions; has sufficient concentration, persistence, and pace to
> complete simple, routine tasks in two-hour increments for a normal workday and
> workweek with normal breaks; and should have no contact with the general public
> and only occasional contact with coworkers.

Tr. 1218.

At step four, the ALJ found that the record did not contain enough evidence of Plaintiff's

past relevant work to make a finding. Tr. 1236. At step five, the ALJ found that, in light of

Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant

numbers in the national economy that Plaintiff could perform despite her impairments, including

marking clerk, small products assembler, and office helper. Tr. 1237. Thus, the ALJ concluded

that the Plaintiff was not disabled within the meaning of the Act. Tr. 1238.

## DISCUSSION

Plaintiff argues that the ALJ (1) improperly classified her neurocognitive disorder and post-

concussion syndrome non-severe impairments; (2) improperly rejected her subjective symptom

testimony; and (3) failed to provide legally sufficient reasons for rejecting the medical opinions of

Paul E. Guastadisegni, Ph.D., and Beth Stoner, MA, LPC.. Pl.'s Br. 3–4 (ECF 14).

## I.    Step Two

Plaintiff contends that the ALJ failed to recognize Plaintiff's neurocognitive disorder and

post-concussion syndrome as severe impairments despite the medical opinions of Beth Stoner,

MA, LPC, and Dr. Guastadisegni. Pl.'s Br. at 7–10. Because the ALJ continued with the

sequential analysis, any error at step two was harmless.

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.'" *Id*. (citing 20 C.F.R. § 404.1520(c)). The step-two severity analysis is a "threshold showing," *Yuckert*, 482 U.S. at 147, that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.[.]" *Id.* at 153. In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)). Step two errors are harmless so long as the ALJ found at least one severe medically determinable impairment, the sequential process proceeded to step three, and the ALJ included limitations due to all the medically determinable impairments, severe and non-severe, in formulating the claimant's residual functional capacity. *Buck*, 869 F.3d at 1049. Thus, even if the ALJ erroneously finds that particular impairments are non-severe at step two, the error is harmless so long as the ALJ considers all of the claimant's severe and non-severe impairments at subsequent steps of the analysis. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ found that Plaintiff had multiple severe impairments at step two but concluded that her neurocognitive disorder was not severe. Tr. 1214. As support for that

conclusion, the ALJ noted that Plaintiff's other medical records, in combination with an unremarkable CT scan from April 2015, showed that Plaintiff's neurocognitive disorder was only mild, and that it was more likely that her neurocognitive issues were due to mental health conditions, such as attention deficit disorder. Tr. 1214–15. While the ALJ's reasoning is unsupported, and a single CT scan from four years before Plaintiff's neuropsychological evaluation wherein she was found to have multiple cognitive challenges is insufficient on its own to support the ALJ's reasoning, "[r]egardless of the source, all of the claimant's limitations are addressed in the residual functional capacity." Tr. 1215. Notably, Plaintiff has not provided evidence that the ALJ failed to address any of Plaintiff's impairments at step two.

Whether Plaintiff's neurocognitive disorders were due to post-concussion syndrome or mental health issues or a combination thereof, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments when formulating the RFC. SSR 96-8p. Because step two was resolved in Plaintiff's favor, and because the ALJ continued with the sequential analysis, any error at step two was harmless. *Buck*, 869 F.3d at 1049. To the extent that Plaintiff's RFC failed to account for all of her impairments, those arguments are addressed below.

## II.     Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting her subjective symptom testimony regarding her mental health by failing to provide specific, clear and convincing reasons. Pl.'s Br. at 26. Specifically, Plaintiff contends that she has waxing and waning symptoms, that the ALJ cherry picked the record, and that Plaintiff's contradictory statements are attributable to her mental health impairments. Pl.'s Br. at 27–31.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.     Plaintiff's Testimony

At the initial hearing on December 8, 2020, Plaintiff reported that she could not work on a regular, full-time basis because she suffers from severe anxiety, memory issues, panic attacks when in public due to her anxiety, an inability to follow simple instructions, and depression. Tr. 153–55. Plaintiff also stated that she takes medication, that they "are very effective," that she experiences no side effects, and that she does not smoke or do "street drugs." Tr. 155–56. As for household chores, she does some laundry, but does not cook, rarely cleans, does not pay bills, and grocery shops with her husband approximately once a month, though sometimes her anxiety prevents her from going into the store. Tr. 156–57. She drives approximately once a week, does not use public transportation, and has an associate degree in general studies. Tr. 152. She also does not attend church, participate in any hobbies except reading and watching television, or visit anyone except for her grandmother. Tr. 157–59. Plaintiff did testify that, at the time of the hearing, her children were in distance learning, and she was responsible for making sure they participated. Tr. 159.

When asked specifically about her memory issues, Plaintiff stated that she would be given instructions, forget, and that her supervisors would get frustrated with her. Tr. 161. Notably, Plaintiff has never lost a job due to her mental impairments. Tr. 406. When asked about her panic attacks, she stated they take place every day, and that she has seen doctors many times for head injuries. Tr. 162–63.

At her second hearing on March 2, 2023, Plaintiff reported that she still only drives approximately once a week, that she has not obtained any additional education outside of her previous associate degree, that she does less cooking and cleaning, and that her memory has gotten worse. Tr. 1299–1300. Since the initial hearing, her medications have changed, she

experiences no side effects, but she reports that she has not yet found the right "mixture." Tr. 1301. Plaintiff also testified that she was three months sober and not using marijuana. Tr. 1302. Plaintiff stated that she cooks maybe once a month, that she tries to vacuum, sweep, and mop approximately once a week, but that her children primarily take care of household chores as she cannot "do much of anything at all." Tr. 1300, 1302–03. Plaintiff also stated that she now goes to "a meeting" on Sunday but did not clarify. Tr. 1304.

When asked about obtaining her associate degree, Plaintiff testified that it took her approximately four or five years, that she needed one on one help, and she obtained low grades. Tr. 1306. She was also asked about caring her autistic son, to which she explained that he is "very high functioning and takes care of himself." Tr. 1307. However, she clarified that she does tell him when to bathe, shower, do laundry, and eat. *Id*. When asked about her day, she stated she will nap throughout the day until her kids come home from school, then she spends time with them, has them do their homework and chores, then they have dinner, she has the children bathe, and then they go to bed. Tr. 1309. Plaintiff further testified that her panic and anxiety have not improved, and neither has her day-to-day functioning. Tr. 1312.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 1219. The ALJ reasoned that Plaintiff's testimony concerning her mental limitations was inconsistent with evidence of her daily activities, as well as evidence from the medical record. Tr. 1220–26.

/ / /

/ / /

C.    **Daily Activities**

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Plaintiff stated that she has trouble with her memory such that she needs many reminders, and that she has anxiety which results in daily panic attacks and often prevents her from shopping in stores. She also stated she "does not do much of anything at all." Tr. 1300. According to her function report, she can only pay attention for a few minutes at a time, she has difficult following written instructions, cannot follow verbal instructions, and cannot handle stress. Tr. 405–06. In discounting Plaintiff's testimony because of her daily activities, the ALJ cited Plaintiff's ability to homeschool her children, attend full time college classes, attend Narcotics Anonymous meetings, attend church, engage in bible study with her children, and Plaintiff's contradictory statements, such as being "highly active" and that she has been "doing some of my hobbies, in between schoolwork." Tr. 1224–26 (citing Tr. 1828, 1853, 1904, 1912, 1921, 1931, 1937, 1948, 1966). Plaintiff argues that these activities do not necessarily conflict with Plaintiff's testimony because her symptoms can wax and wane. Pl.'s Br. at 30. However, Plaintiff does not point to any evidence that the ALJ overlooked or failed to take into consideration. Furthermore, Plaintiff's litany of activities demonstrate she is more capable than alleged.

As such, the ALJ did not err in discounting Plaintiff's testimony based on her daily activities.

/ / /

### D.    Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

As discussed above, Plaintiff stated that she has trouble with her memory such that she needs many reminders, and that she has anxiety which results in daily panic attacks and often prevents her from shopping in stores. Tr. 153–55. According to her function report, she can only pay attention for a few minutes at a time, she has difficulty following written instructions, cannot follow verbal instructions, and cannot handle stress. Tr. 405–06.

The ALJ concluded that Plaintiff's testimony was inconsistent with the medical evidence because of activities that contradict her testimony, and her mental status examination findings.

As support for his conclusion, the ALJ pointed to numerous mental status examinations from 2017 to 2019 where Plaintiff displayed linear and logical thought processes, linear associations, reality-based thought content, grossly intact or mildly impaired cognition, average intelligence, intact attention and fund of knowledge, and intact or mildly impaired insight and judgment. Tr. 1220 (citing Tr. 462, 467, 473, 479, 482, 502, 523, 530, 542, 566, 618). Plaintiff also endorsed feelings of anxiety, passive suicidal ideation, depression, some insomnia, PTSD-like symptoms, and mood swings. The ALJ also pointed to a neuropsychological consultative examination from September 2019 where Plaintiff displayed an IQ score of 66, placing her in the extremely low range of intelligence, with testing revealing she had slow processing speed, issues with task completion, attention, memory impairments, compromised problem-solving skills, comprehension difficulty, focus problems, decreased mental flexibility, and even when relatively stable on medications Plaintiff described as helpful, she still had cognitive impairments. Tr. 442–46. The examiner also noted she did not have an intellectual disability considering she had managed to obtain an associate degree. Tr. 446. A report from October 2019 showed Plaintiff's bipolar disorder was in remission. Tr. 833. Treatment notes were scarce until June and July 2020, in which Plaintiff cancelled or was absent from her appointments. Tr. 1053, 1056, 1060. A report from October 2020 showed Plaintiff was stable on her medications. Tr. 1101.

Plaintiff did not engage in regular mental health treatment again until September 2022, where she reported struggling with PTSD, managing distress, trauma symptoms, suicidal and self-harm ideation, a tendency to shut down, and mood swings. Tr. 1765. Over the course of her treatment, Plaintiff demonstrated Plaintiff had good insight, fair judgment and impulse control, intact memory, good attention and concentration, unremarkable thought processes, appropriate thought content, and unremarkable perception. Tr. 1765, 1771, 1780, 1784, 1788, 1792, 1796,

1801, 1806, 1810, 1815, 1819, 1823, 1827. Plaintiff also began homeschooling her children, attending full time college classes, attending Narcotics Anonymous meetings, attending church, engaging in bible study with her children, and stating she is "highly active" and that she has been "doing some of my hobbies, in between schoolwork." Tr. 1224–26 (citing Tr. 1828, 1853, 1904, 1912, 1921, 1931, 1937, 1948, 1966). The ALJ also pointed to contradictory statements, such as Plaintiff stating she "does not do much of anything at all," and that she had not pursued any education outside of her associate degree, despite evidence to the contrary. Tr. 1299–1300.

Plaintiff argues that these examples are not specific, clear and convincing enough. However, it is unclear what more the ALJ could have done. Plaintiff is not entitled to a "line-by-line exegesis of the claimant's testimony, nor [are ALJs required] to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). Unfortunate as it may be, evidence abounds that is "susceptible to more than one rational interpretation," however, in such circumstances, "it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). As such, the ALJ did not err in discounting Plaintiff's testimony based on inconsistent evidence.

## III.    Medical Opinions

Plaintiff alleges that the ALJ improperly rejected the medical opinions of Paul E. Guastadisegni, Ph.D., and Beth Stoner, MA, LPC. Pl.'s Br. at 10–25. Specifically, she argues that the ALJ's reasoning for rejecting her providers' medical opinions was unsupported by substantial evidence, including that inconsistencies and daily activities were not proper bases for rejection.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan

18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as

unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

"An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) A medical opinion presented in "check-the-box questionnaire" form cannot be rejected on that basis alone, but only when the questionnaire "do[es] not contain any explanation of the bases of their conclusions." *Ford*, 950 F.3d at 1155 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023) (noting that the Ninth Circuit has "accepted discounting of a medical opinion set forth in a checkbox form with little to no explanation.").

### A.    Paul E. Guastadisegni, Ph.D.

Plaintiff first argues that the ALJ improperly discredited Dr. Guastadisegni's opinion regarding her need for: (1) repetition of instructions for even short, simple, and routine tasks; (2) many breaks; (3) time to process; (4) positive reinforcement and encouragement; (5) guidance; and (6) information provided to her in small amounts in a contextual format. Pl.'s Br. at 19. This Court disagrees.

Dr. Guastadisegni conducted a neuropsychological evaluation of Plaintiff on September 3, 2019. Tr. 436. Following testing, Dr. Guastadisegni opined that Plaintiff had numerous cognitive challenges, including attention and tracking issues, executive function impairments, memory issues, slow processing issue, decreased mental flexibility and set shifting abilities, and language-based reasoning and comprehension. Tr. 446. He further noted that Plaintiff would need information presented to her one piece at a time, needs repetition, needs to write things down, needs to use other basic memory strategies (e.g., calendar), needs time to complete tasks,

should refrain from multi-tasking, should develop a routine in her daily life and stick to it, and her routine should have a schedule for morning, afternoon, and evening activities and tasks. Tr. 447. Beyond his opined limitations, Dr. Guastadisegni also believed it would be best for Plaintiff to provide verbal feedback to another person to increase her level of comprehension, and that it would be a good idea to not overwhelm her with time demands or excessively long and strenuous activities. Tr. 448.

The ALJ found Dr. Guastadisegni's opinion only partially persuasive because it was inconsistent with other medical records, with her activities of daily living, and because his opinion contains "broad, vague, and general recommendations that little relevance to what the claimant is capable of doing in a workplace setting." Tr. 1229–31. Plaintiff argues that neither her daily activities nor possible inconsistencies are proper bases for discounting Dr. Guastadisegni's opinion. Pl.'s Br. at 15–19.

The ALJ partially discounted Dr. Guastadisegni's opinion because it was inconsistent with Plaintiff's ability to care for her children (including a special needs child with autism), drive, occasionally clean, read, watch television, play games with her children, manage her children's distance learning, take care of herself, use a computer, and get along with authority figures or bosses. Tr. 1229. However, Plaintiff's testimony provides insight the ALJ ignores. Plaintiff does not perform any household chores for any substantial length of time, caring for her children includes telling them when to eat, sleep, and bathe, and there was no information regarding what Plaintiff did to manage their distance learning. Tr. 159, 1303, 1307. Plaintiff also drives approximately once a week and grocery shops once a month in stores, and never alone. Tr. 152, 154. None of these activities provide substantial evidence in rejecting Dr. Guastadisegni's opinion.

The ALJ partially rejected Dr. Guastadisegni's opinion stating that Plaintiff: (1) should have information presented to her one piece at a time; (2) needs repetition in order to understand; (3) needs many breaks and time to process; and (4) might shut down and withdraw when pressured because they are inconsistent with other evidence in the record. As support for her findings, the ALJ noted that during the time of Plaintiff's neuropsychological evaluation, from March to October 2019, evidence showed that Plaintiff had intact memory functions, no noted issues with concentration, she was able to obtain an associate degree, and in 2023 she was once again attending college classes and looking into transferring to OSU. Tr. 1229 (citing Tr. 445, 841, 856, 860, 864, 868, 872–73, 1853, 1978). The ALJ further noted that Plaintiff's need for breaks and time were vague and speculative with no attached reasoning or explanation that could be translated into concrete limitations. Similarly, Dr. Guasadisegmi's assessment that Plaintiff might shutdown and withdraw due to pressure also had no attached explanation.

Plaintiff argues that having information presented one piece at a time is not necessarily inconsistent with her ability to obtain an associate degree because she struggled, needing four or five years, one-on-one instruction from teachers, and got low grades. Pl.'s Br. at 17. Regarding her transferring to OSU, she further argues that she "required help from her counselor in finding contact information for OSU about classes." *Id* (citing Tr. 1978). Plaintiff, however, is incorrect. Obtaining an associate degree alone may not have been sufficient, but other cited evidence provides support for the ALJ's finding. As for "requiring" her counselor's help, no such claim exists. The counselor noted that she provided assistance, not that her assistance was necessary or required or that Plaintiff was incapable of doing so alone. Tr. 1978.

Plaintiff next argues that her need for repetition was supported by evidence in the record by Beth Stoner, Plaintiff's mental health counselor. Pl.'s Br. at 17. However, as will be discussed

below, Stoner's opinion was properly rejected and, as such, does not refute the ALJ's finding.

Plaintiff then argues that her need for many breaks, time to process, and tendency to shutdown and withdraw due to pressure was supported by Dr. Knopf's opinion as well as VE testimony. Pl.'s Br. 18. Dr. Knopf's opinion, however, was properly rejected and Plaintiff does not argue otherwise. As for the VE's testimony, it does nothing to clarify Dr. Guastadisegni's opinion for obvious reasons.

Lastly, Plaintiff argues that the ALJ improperly rejected Dr. Guastadisegni's opinion that she would need to be checked for comprehension. Pl.'s Br. at 18–19. The ALJ rejected this limitation for the same reason she rejected Plaintiff's need for information to be provided one piece at a time. Plaintiff argues that Stoner's opinion provides support for Dr. Guastadisegni's limitation, but as addressed above, Stoner's opinion was properly rejected and does not refute the ALJ's finding.

 In sum, the ALJ did not err in partially discounting Dr. Guasadisegni's medical opinion.

## B.    Beth Stoner, MA, LPC

Plaintiff contends that the ALJ erred in finding Beth Stoner's opinion not fully persuasive due to improperly cherry picking the record, Plaintiff's activities of daily living, and because Stoner was not an acceptable medical source. Pl.'s Br. at 22–25.

Stoner serves as Plaintiff's mental health counselor and has been seeing her once or twice a week since September 2022. Tr. 1684. She provided an assessment in questionnaire form, noting that Plaintiff had a fair ability to function in understanding and remembering information, and had seriously limited ability in applying information, interacting with others, concentration, and in her ability to adapt. Tr. 1685–86. She also believed Plaintiff was unable to independently mange herself. Tr. 1686. Stoner further noted that Plaintiff was seriously limited in her ability to

understand, remember, and carry out both simple one or two step instructions and detailed but uninvolved instructions, as well as in her ability to sustain an ordinary routine without special supervision. *Id*. She also believed Plaintiff was incapable of maintaining attention for tow hour segments. *Id*. Notably, for each area of functioning, Stoner stated that she was unable to attest to Plaintiff's functional limitations in a work environment. Furthermore, Stoner stated she was not qualified to comment on Plaintiff's medication and treatment or whether she would need unscheduled breaks. Tr. 1687.

The ALJ found Stoner's opinion not fully persuasive because it was inconsistent with her own treatment notes, Plaintiff's daily activities were inconsistent with Stoner's opinion, Stoner could not say what Plaintiff's limitations would have been in a work environment, her treating relationship with Plaintiff was short, and she is an unacceptable medical source such that any diagnoses could not be relied upon. Tr. 1234. Plaintiff argues that the ALJ cherry picked the record, her daily activities were not a valid basis to reject Stoner's opinion, the length of treatment was not short, and that her being an unacceptable medical source still required a legally sufficient evaluation. Pl.'s Br. at 22–25.

The ALJ found that Stoner's opinion was inconsistent with her own treatment records. This finding was supported by substantial evidence. Despite Stoner's opinion that Plaintiff was seriously limited in her ability to concentrate, adapt, interact with others, apply information, and follow one or two step instructions, and incapable of functioning independently when it came to maintaining attention, Stoner's treatment notes do not reflect these findings. From September 2022 to the date Stoner provided her medical opinion in December, Stoner noted that Plaintiff had good insight, fair judgment and impulse control, intact memory, good attention and concentration, unremarkable thought processes, appropriate thought content, and that her

perception was unremarkable. Tr. 1765, 1771, 1780, 1784, 1788, 1792, 1796, 1801, 1806, 1810, 1815, 1819, 1823, 1827. These findings do not provide support for Stoner's assessed limitations. Likewise, the written notes and observations from Plaintiff's sessions with Stoner also fail to establish the proffered limitations. *See* Tr. 1765–66, 1772, 1781, 1785, 1789, 1793, 1797–98, 1802–03, 1807, 1812, 1816, 1820, 1824, 1828. Notably, Plaintiff does not address how months of Stoner's own treatment notes are an example of the ALJ cherry picking the record, nor does she provide relevant evidence to support her assertion. Because inconsistency with Stoner's own treatment notes is dispositive, the Court need not address the ALJ's other reasons for discounting Stoner's medical opinion. As such, the ALJ did not err in partially rejecting Stoner's opinion.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 15th day of January 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge